GEORGE W. BRILLHART *vs.* FRANK W. MISH ET AL.

*Deed Conveying to Trustee a Life Interest in Land For Benefit of Grantor—Trust Terminated by Grantor's Consent to a Sale For Partition Among Remaindermen—Exceptions to Ratification of Sale.*

The legal estate of a trustee under a voluntary deed of trust does not last longer than is necessary to effect the objects of the trust, and when these objects have been accomplished the trust is at an end.

A surviving husband, who was entitled as such to a life estate in certain farms, the remainder in fee being vested in his children, conveyed to a trustee "all that life estate in said farms," with directions to manage the same and pay over the net income to the grantor, because, by reason of bodily infirmities, he had become incapable of managing his affairs. The deed provided that the trust should be irrevocable. Subsequently, one of the remaindermen filed a bill in equity asking for a sale of the farms for purposes of partition. The life tenant was made a party de-

fendant and filed an answer consenting to the sale of the land free from his life interest, provided he be allowed from the proceeds of sale a sum of money equivalent to the value of his life estate. A sale was made and the trustee under the deed of trust, who had not been made a party to the cause, excepted to the ratification of the sale. *Held*, that the equitable interest of the life tenant, after the making of the deed, was alienable by him and that his consent to the sale operated to end the trust, and the trustee, having no longer any duties to perform with respect to the property, has no standing in Court to except to the ratification of the sale.

When a party to a cause in which a decree directing a sale of land to be made answered the bill and consented to the decree, he cannot afterwards, upon exception to the sale, be heard to deny the jurisdiction of the Court to make the decree.

A decree directed that three weeks notice of a partition sale be given. The sale was advertised on November 10th, to take place on December 1st. *Held*, that in the absence of any evidence that injury resulted therefrom, the sale so made will not be set aside on the ground that the prescribed notice was not given.

When land sold at a judicial sale is represented as being in fee-simple, a purchaser is entitled to have mortgages thereon satisfied from the proceeds of sale, or to be released from his purchase.

Appeal from the Circuit Court for Washington County (KEEDY, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Norman B. Scott, Jr.,* and *Alexander Armstrong, Jr.,* for the appellant.

The instrument in writing which is the basis of the exception to the sales, is in the form of a deed of trust, but, upon examination, it will be found to be nothing more than a power of attorney. It matters not what the parties to a paper may label it. The paper is to be judged by its own inherent qualities, and can only be given that legal effect which its language and terms warrant. *State* v. *Banks,* 48 Md. 520 ; *Wilding* v. *Richard,* 1 Collier, 665.

The paper being, therefore, such as we contend, it is revocable at the pleasure of Brillhart, the principal ; notwithstand-

ing the clause in it making it irrevocable.    1 *Amer. & Eng. Enc. of Law,* 2nd ed., 1216–1217; *Attrill* v. *Patterson,* 58 Md. 226 ; *Smith* v. *Dare,* 89 Md. 47.

Admitting that a trust exists, the presumption must necessarily be that the trustee possesses only those powers expressly conferred or necessarily implied.    Otherwise, the creator of the trust may be stripped of rights whose loss he never contemplated and may thus be construed out of a portion of his reserved estate.    27 *Amer. & Eng. Enc. Law,* 113, 117, 118.

It is true Brillhart used language which transferred to Angle all his title and interest in his life estates in these farms.    Immediately thereafter, however, and with over-shadowing force comes a statement of the objects for which the transfer was made.    The title was passed merely as a formal prerequisite and as a basis upon which to construct the trust itself.    The statement of the powers conferred forms the crucial part of the instrument and the only index by which the authority of the trustee may be measured.    *Long* v. *Long,* 62 Md. 33.

In *Smith* v. *Towers,* 69 Md. 77, and *Cherbonnier* v. *Bussey,* 92 Md. 421, cited in the opinion of the lower Court, do not seem to us to be applicable to this case.    It is not denied that life estates can be given without the power of alienation, as they were in those cases by third parties.    So also the settlor could have deprived himself of this important right had he chosen so to do.    The essential point is that although possessing this privilege, he failed to exercise it, and the right to alienate, therefore, remained in him unimpaired.

The only portion of the deed which can be construed as having this effect is the section which declares that the trust shall be irrevocable.    This clause certainly receives its broadest interpretation when the irrevocability is considered to be co-extensive with the existence of the cause for the trust.

While Brillhart retained the title to the farms, he was responsible for their prudent management, and, by reason of his infirmities, the trust was made necessary.    As soon, however, as he exercised his undoubted right of alienation, the *corpus* of the estate was transformed into money which could be ap-

portioned between the life tenant and the remaindermen and with the disappearauce of all responsibility to others, the need of a trustee's assistance likewise vanished.

If, then, Brillhart possessed the right of alienation, how was he to exercise it, while the legal title remained in the trustee? As has been indicated already, the trust was to endure only while the cause for it existed. Until that time it was to be irre-vocable, but upon its proper conclusion, the legal title would *ipso facto* revert to the settlor and through him pass to a pur-chaser. Therefore, when Brillhart determined to convey his estates to others, and by his answer, filed in a Court of equity, consented in solemn form to a sale, he evidenced beyond a doubt his desire to dispose of his realty holdings and the re-sponsibilities connected therewith. By such action he removed all necessity for a further continuation of the trust and if the legal title had ever passed out of him, it immediately reverted to him, as upon the happening of the implied condition in the original deed of trust. Thus he was enabled to convey a full and unincumbered title to the purchasers at the sale held under the authority and by the direction of the Court of equity.

Even if the legal title remained in the trustee and did not revert to Brillhart to the extent of enabling him to convey to others, Brillhart was certainly the *cestui que trust* with all the privileges incident to such a party. It is a universal principle that the beneficiary in every trust, where he is not prevented by the express terms of the instrument, can freely sell his in-terest. *Perrine* v. *Newell*, 49 N. J. Eq. 57; *Thompeon* v. *Ballard*, 70 Md. 10. Such sale entirely defeats the trust. *Thompson* v. *Ballard*, 70 Md. 10.

*Abraham C. Strite* for the appellee.

The estate which John W. Brillhart had in these lands was a life estate, and this life estate he fully conveyed to the trustee. At his death his interest in these farms, of course, end. The trust was created to protect him in his enfeebled condition for the balance of his life; and these exceptants contend that said trust has done, is doing and will continue to do the very thing

that was contemplated at the time of the creation of the trust. It was made also for the purpose of protecting the interests of his children by saving the estate for them after his death, to prevent waste, and in every other manner to fully carry out and protect the interests of remaindermen as a life tenant should do. *Brown* v. *Mercantile Trust Co.*, 87 Md. 377.

That case was a direct proceeding to accomplish what is attempted to be accomplished in this case indirectly and collaterly, but it failed. Brillhart can not do indirectly what he can not do directly. These additional authorities support the Maryland case. *Ashart's Appeal*, 77 Pa. 464; *Keyes* v. *Carlton*, 141 Mass. 45 (55 Am. Rep. 446); *Reidy* v. *Small*, 154 Pa. Stat. 505 (20 L. R. A., 362); *Neal* v. *Black*, 177 Pa. 83 (34 L. R. A. 707); *Neisler* v. *Pearsall* (R. I.) 52 L. R. A. 874; 27 *Am. & Eng. Ency. of Law*, 309, 107, 118. These authorities abundantly support the contention that John W. Brillhart can in no wise affect by his own action, without the consent of the Court, his interests as established by his deed of trust, and that, therefore, his answer did not confer jurisdiction upon the equity Court to pass a decree in this cause to bind his interests, and that, in the absence of the consent of Samuel P. Angle, trustee, and in the absence of the sanction of a Court regularly had, the proceedings in this cause, in so far as John W. Brillhart is concerned are simply a nullity aud without any effect whatever.

JONES, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court for Washington County sustaining exceptions to a sale made under a decree of that Court and setting aside the sale. The facts which give rise to the questions that are involved in the litigation are that Sarah J. Brillhart of Washington County died in 1898 leaving surviving her her husband, John W. Brillhart, a son, George William Brillhart, and a daughter, Mary C. Resh, the wife of Franklin D. Resh. She died intestate seized and possessed of several parcels of real estate situated in Washington County and of a farm in Berkely

County, West Virginia.   On the 18th of November, 1899, her surviving husband, John W. Brillhart, executed to one Samuel P. Angle a deed in which it was recited "Whereas the said John W. Brilhart has a life estate in six farms situated in Washington County, State of Maryland, and one farm in Berkely County, West Virginia, by reason of his wife, Sarah Jane Brilhart being the owner thereof, in fee, his wife having departed this life and children being born to them which are living.   And whereas the said John W. Brillhart by reason of bodily infirmities, more particularly the loss of speech brought on by paralysis, and by reason of other bodily infirmities has become incapable of managing his large financial interests as they should be managed, both in the interest of himself as life tenant and of his children as remaindermen.   And whereas it is the desire of said John W. Brillhart to make such ar-rangements of his affairs that they may be more properly managed under the direction and supervision of the Court of Chancery of Washington County.   *   *   *   And whereas he reposes great confidence in Samuel P. Angle as a man of integrity and knowledge of the management of farms and of business affairs in general."   It then granted and provided as follows:   "In consideration of the premises and of the sum of one dollar   *   *   *   the said John W. Brillhart does hereby grant and convey, transfer and set over unto the said Samuel P. Angle and to his successors as hereinafter provided, all that life estate in said farms   *   *   *   together with all crops now growing, garnered or in process of being gathered, together with all choses in action, all cash in bank and all moneys owing to him from any source whatever, as well as every nature and description of estate, asset, chattel, or any other kind of property in interest whatever belonging to the said John W. Brillhart.   To have and to hold said prop-erty, interest and estate unto the said Samuel P. Angle, and to his successors as hereinafter provided, in trust and confi-dence nevertheless for the following purposes and uses, that is to say, first, to manage said farms as landlord, to the same extent, and as fully as if the said John W. Brillhart were man-

aging said farms in person, to make leases thereof to tenants, give notice to quit, to contract for the landlord's share of seed wheat and fertilizer and to do every other thing which is incumbent upon the landlord of a farm to do, fully clothing the said Samuel P. Angle, trustee, with all other powers in addition to those expressly enumerated which may be necessary for fully carrying out the purposes of this trust. Second, to gather the crops on said farms and market them at such times and places as may be most convenient and for the best interests of this trust. Third, to collect all moneys from any and all persons whatever who may be owing and to sue in his name as trustee and to do any and all things which may be necessary for * * * collection and settlement of all claims owing to the said John W. Brillhart as fully as if he were doing it in proper person."

It is further provided that the said Angle shall on the first day of January in each year, or within fifteen days thereafter, make settlement in the Circuit Court of the county of all moneys received and expended by him, his report "to be uuder oath and subject to exceptions, as other accounts formerly stated by the auditor" of the Court in chancery cases; that he shall pay to said Brilhart such sums during the year as may be necessary for his own comfortable maintenance and shall expend for the personal benefit and comfort of said Brillhart such other sums for medicines, medical advice, clothing, traveling expenses, &c., as he may require not to exceed on the average thirty dollars per month, but if a greater sum be needed it shall be paid but not until the end of the year when the annual settlement is made in the Circuit Court—it being the intent "that all expenditures necessary for the comfortable maintenance and health" of the said Brillhart "shall be made in reason and without stint;" that the said Angle should give bond, &c.; that he should receive compensation for his services at the rate of five per cent on expenditures and the same on his receipts; that the trust should be irrevocable and should supersede all powers of attorney previously made. The said Angle agreed to accept the trust subject to the con-

ditions and provisions set out in the deed and to consult with the said Brillhart "and receive his advice about the management of farms and endeavor to the fullest extent possible to adopt the views" of said Brillhart "and have him co-operate with the said trustee;" but it was to be expressly understood the judgment of the said Angle should be always paramount. This deed was acknowledged and recorded. On the 12th of October, 1903, John W. Brillhart executed what was intended to be a revocation of the deed which has been referred to and recited.

On the 17th of October, 1903, Mary C. Resh and her husband filed in the Circuit Court for Washington County a bill in equity alleging the death of Sarah J. Brillhart, intestate, and possessed of the real estate which has been mentioned; that she left surviving her John W. Brillhart, her husband, and two adult children, the said Mary C. Resh and George W. Brillhart; that the undivided interest of the said Mary C. Resh in the real estate left by the said Sarah J. Brillhart had been conveyed to her husband and co-plaintiff, Franklin D. Resh, and that of the said George W. Brillhart to his wife, Iva M. Brillhart; that the said real estate was not susceptible of partition without loss and injury; and praying a decree for a sale of the same for the purpose of partition. To this bill John W. Brillhart and George William Brillhart and the latter's wife, Iva M. Brillhart were made defendants and were the only defendants.

John W. Brillhart filed his separate answer thereto admitting "all the matters and things" stated therein and consenting to a sale; and that the lands should "be sold free of his interest as surviving husband provided that he receive from the sale of said lands the amount of money allowed a surviving husband" by the equity rules of the Court. George W. Brillhart and his wife filed their joint answer admitting the allegations of the bill, consenting to a decree for sale, and agreeing that out of such of the proceeds of sale as might be distributed to the share of Iva M. Brillhart there might be paid "the liens existing against" the "respondents or either of them * * * until they are wholly satisfied and discharged." A

decree for a sale of the lands in question was thereupon passed. After the decree had been passed certain judgment and mortgage creditors of Franklin D. Resh and wife, and of George W. Brillhart and wife entered voluntary appearances in the cause and filed answers averring themselves willing that the lands decreed to be sold might be sold free of their liens provided that the proceeds of sale falling, in the distribution thereof, to their respective debtors be first applied according to legal priority to the satisfaction of their claims.

On December 10th, 1903, the trustees appointed by the decree to make sale of the land in question reported a sale of several parcels thereof. To this sale exceptions were filed by Frank W. Mish, a purchaser of one of the parcels sold and by Samuel P. Angle, the trustee named in the deed of the 18th of November, 1899. The purchaser, Mish, excepted because of the alleged outstanding title to the property in Samuel P. Angle, who had not been made a party to the proceedings in which the decree for the sale had been passed, and who claimed to still have the right to collect the rents and profits of the real estate decreed to be sold during the life of the said John W. Brillhart; and because of two outstanding mortgages overdue and unpaid to which the undivided interest of Franklin D. Resh and wife in the real estate sold to him was subject; and which he claimed should be paid out of the proceeds of sale of the said interest and released before he is required to take and pay for the land of which he was reported as purchaser. Samuel P. Angle bases his right to except to the sale upon his title under the deed from John W. Brillhart to him; and while setting up other grounds of exception urges, as the principal ground, that he as trustee under that deed was not made a party to the cause and "has not consented to the decree of sale  *  *  *  *  and the Court was without jurisdiction as to the estate of John W. Brillhart to pass said decree;" and that the trustees appointed by the decree in the cause to make sale of the land in question had "no authority to sell or convey the interest of the said John W. Brillhart in said lands."

BRILLHART *vs.* MISH.

As respects the exception to the sale upon the part of the purchaser Mish, which is based upon the fact of the property purchased by him being subject to the mortgages mentioned in his exceptions the record contains evidence of the existence of the mortgages; and, if, as he alleges, it was represented to him by the trustees, and he was induced to purchase under the belief, that he was to get a clear fee-simple title to the land sold to him he will be entitled to have the property freed from the liens of the mortgages by having the same satisfied from the purchase-money or to be released from his purchase. The record discloses nothing as affecting this exception further than to show the existence of the mortgage liens therein referred to; and nothing more definite can be determined in regard to it than what has been said. The exception of this purchaser based upon the alleged outstanding title in Samuel P. Angle, as trustee, under the deed of the 18th of November, 1899, will be disposed of in considering the exceptions of Angle which have been referred to.

In disposing of the last mentioned exceptions the rights of the parties involved in the case at bar as affected by the matter thereof can be effectually settled by determining the fundamental question what rights, powers and duties were conferred upon the exceptant, Angle, by the deed of the 18th of November, 1899; and what right or duty there is remaining to him thereunder in the circumstances that have transpired. The deed in question grants to the trustee, Angle, all "the life estate" of the grantor, Brillhart, in the "farms" mentioned therein. The deed does not in terms convey this real estate or "farms" to the trustee to hold during the life of the grantor but only employs the general expression already noticed. The purposes for which the deed was made are, however, fully and specifically stated. For the reasons stated therein it gave to the trustee the management of the farms and made it his duty to account for and pay over the income and profits therefrom as was in the deed provided. All of the provisions of the deed were personal to the grantor. There was no provision or limitation in any respect for the benefit of any other than

the grantor himself. It makes mention of the remaindermen
or those having the fee-simple title, who were the children of
the grantor, but creates no duty in respect to them that the
trustee is to perform. It only recognizes their interests and
the duty of the grantor to have these interests in mind in deal-
ing with the property. All of this appears from the terms of
the deed which have been recited and which it is unnecessary
here to repeat. This being so the full equitable and beneficial
interest in the life estate in the property in question remained
in the grantor. There would seem to be no question that he
had full control of the income to be derived therefrom and the
trustee would have been protected in paying or applying it to
any use that the grantor might have directed. This equitable
interest was liable for the debts of the grantor and could have
been taken in execution and sold by his creditors. It would
have passed in insolvency or bankruptcy proceedings to the
trustees in such proceedings for the benefit of creditors.

If such was the nature of the estate of the grantor why could
he not sell and convey this beneficial or equitable estate when
circumstances in his judgment rendered this advisable? Why
could he not surrender it to those in remainder for a consid-
eration that might constitute an inducement to him to do so?
And why could he not consent that it might be sold in con-
junction with their estates in the same property if this were
deemed advantageous to his interests and those of others con-
cerned? By no fair construction of the deed in question can
it be held that the grantor therein deprived himself of the full
control of the equitable interest in the estate for life in the
property mentioned in the deed; or that in making disposition
of it he needed to have the consent and co-operation of the
trustee. When the bill of complaint was filed in the case at
bar it was competent for John W. Brillhart, notwithstanding
the deed of the 18th of November, 1899, to appear and sub-
mit to the jurisdiction of the Court and consent to a sale of
his interest in the property that was decreed to be sold. Upon
the consummation of a sale of the property or any part of it
that was embraced in the deed just referred to the trust, as to

the part so sold, ceases and the title of the trustee as respects that which is so sold is at an end. This is in accord with both reason and authority. In 1 *Perry on Trusts*, sec. 312, it is laid down : "1. That whenever a trust is created, a legal estate sufficient for the purposes of the trust shall, if possible, be implied in the trustee, whatever may be the limitations in the instrument, whether to him and his heirs or not." 2. "Although a legal estate may be limited to a trustee to the fullest extent, as to him and his heirs, yet it shall not be carried further than the execution of the trust necessarily requires."

This doctrine was enunciated and applied in the cases of *Doe, Lessee of Poor*, v. *Considine*, 6 Wall. 458, and *Young* v. *Bradley*, 101 U. S. 782. In the case in 6 *Wall.* it was said: "It is well settled that where no intention to the contrary appears the language used in creating the estate will be limited and restrained to the purposes of its creation. And when they are satisfied the estate of the trustee ceases to exist and his title becomes extinct. The extent and duration of the estate are measured by the objects of its creation." Now in the case at bar the grantor in the deed in question, Brillhart, created the trust estate for his personal benefit and for the objects specifically set forth in the deed. The trustee had no interest in the estate conveyed to him except the mere legal control to enable him to perform the duties of the trust. These duties were incident to and inseparable from the equitable and beneficial estate which remained in or was reserved to the grantor. This equitable and beneficial estate of the grantor was, as we have seen, an alienable one and when it was aliened the purposes which the grantor had in view in the creation of the trust were satisfied and the title of the trustee became extinct and his estate ceased to exist.

Among our own decisions, the one that bears a close analogy to the one at bar is that of *Thompson* v. *Ballard*, 70 Md. 10. There a wife, Mrs. Thompson, conveyed certain property, (real estate) in trust for her sole and separate use during her life and then for the benefit of her husband as follows:

"In trust that the said trustee shall appropriate and apply the net rents, issues, incomes and profits derived from the said trust property and premises, to the use, benefit, support and maintenance of said Robert F. Thompson for and during and until the end of his natural life." The husband, Robert F. Thompson, survived her and became insolvent and in the course of proceedings in insolvency his equitable life interest in the trust property was sold to a person who afterwards conveyed it back to him. After the life estate in the husband, the trust property was limited over. By the terms and effect of these limitations over the ultimate interest in the property became fixed in a son of Mrs. Thompson during the life time of her husband. The husband and the son united in a bill in equity, making appropriate parties, asking that the trustees be discharged from the trust and that the trust be declared at an end. This Court held that the trustee had no longer any duties to perform under the trust and the same was at an end. In reference to the equitable life interest of the husband and its transfer to another party the Court said: "The object of the trust was strictly and entirely personal. Robert Thompson was alone in contemplation, and it was incapable of being performed in reference to any other person. When a third person became possessed of his rights of property, the trust was entirely defeated. Thompson purchased this person's interest in the property; but he acquired what his vendor had, in the same plight and condition as he held it, just as any other purchaser would do." The Court thus recognized the alienable quality of this equitable life estate and held that the alienation of it defeated the trust to which it had been subject.

The case of *Brown* v. *Mercantile Trust Co.*, 87 Md. 377, relied upon by the appellees is not in point here. There was no pretence in that case that the trust was at an end by having been performed according to its objects; and that the purpose of its creation as manifested by its terms had ceased to exist. It was an attempt to recall and revoke a trust which was still existing and the purposes of which remained unfulfilled.

It results from the views that have been expressed that we are of opinion the exceptant, Samuel P. Angle, has no standing in Court to be heard upon the exceptions filed by him to the sale of the property in controversy because as respects such property he, no longer, has any duty to perform or any interest to protect. We may here say that in certain litigation and proceedings concerning the transfer by John W. Brillhart of his interest in the farm in Berkeley County, West Virginia, which was included in the deed to Angle, which we have been considering, this identical deed came before the Supreme Court of West Virginia for construction; and in an opinion rendered by that Court on the 22nd of April last, the Court reached the same conclusions as to the nature and effect of the deed as we have here expressed. This disposes of all of the exceptions which are formally and specifically set out in the record.

At the foot of the exceptions by Samuel P. Angle appears the following: "I do hereby unite and join with Samuel P. Angle in the above exceptions" which is signed "John W. Brillhart (his X mark)." This is not signed by a solicitor nor authenticated in any way further than being witnessed. This is rather an informal and irregular way of becoming a party to exceptions but waiving that this exceptant, if we treat him as such was a party to the decree under which the sale was made and answered the bill of complaint and consented that the decree be passed. He cannot be heard now, upon exceptions to the sale, to deny the jurisdiction of the Court to pass the decree.

There is no satisfactory evidence that the sales in question were not made to the best advantage practicable; or that any injury resulted from the matters set up as objections in the exceptions of Angle. The objection that the requisite and proper notice of the sale was not given in that the decree prescribed a notice of three weeks and the sale was advertised on the 10th of November to take place on the first of December is, in the absence of injury resulting therefrom, too trivial in its nature to justify the Court in requiring the expense and

risk of a new sale on that ground. We agree with the expression of views of the lower Court as to this last-mentioned exception but for the reasons appearing in considering other exceptions the order of that Court from which the appeal here was taken must be reversed.

> *Order reversed with costs to the appellants and cause remanded.*

(Decided June 9th, 1904.)