BUCHANAN et al. v. DROVERS' NAT. BANK OF CHICAGO.

(Circuit Court of Appeals, Sixth Circuit. April 17, 1893.)

No. 47.

1. PROMISSORY NOTES—NEW NOTE—ILLEGALITY OF OLD NOTE.
    A new note given to raise money with which to pay off a prior note, which had been given to obtain means whereby to prosecute an unlawful business, is not affected by the illegality of the first note.

2. SAME—RIGHTS OF BONA FIDE PURCHASER.
    Even if such new note were illegal, a bank discounting it in ignorance of the purpose for which it was given might enforce it without regard to such illegality.

3. USURY—CONFLICT OF LAWS—PLACE OF DISCOUNT AND PAYMENT.
    A note dated and signed by the makers in Tennessee, and payable in Chicago, Ill., and forwarded by them to the payees in Chicago, to be used by the latter in raising money wherewith to pay off a prior note made by the same parties, and actually used in Chicago for that purpose by discounting it at a bank there, must be held an Illinois contract, and governed by the laws of Illinois relating to usury.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

At Law. Action by the Drovers' National Bank of Chicago against R. G. Buchanan, J. L. Parkes, and G. R. Hill on a promissory note. There was a judgment for plaintiff, and defendants bring error. Affirmed.

Statement by SEVERENS, District Judge:

This cause comes here from the circuit court for the middle district of Tennessee, on a writ of error prosecuted by the defendants in the court below, where, upon a trial before Circuit Judge Taft and a jury, the verdict and judgment were rendered for the bank. The facts shown by the record, so far as they are material for consideration upon the errors alleged and relied upon, are these:

In May, 1885, Buchanan and Parkes, residents of Tennessee, and Hill, a resident of Mississippi, the defendants below, associated with one Thompson, then resident in the Indian Territory, were engaged in buying, grazing, fattening, and selling cattle. The grazing and fattening the cattle for the market was carried on in the Indian Territory, into which they were brought for that purpose. The market principally had in view was that of Chicago. Needing funds for the prosecution of their business, they applied to James H. Campbell, who was engaged in the live stock and commission business at Chicago, under the name of Campbell, Lancaster & Co., to procure from or through him an advancement of money upon the joint note of the four for $25,000, payable to his order in Chicago in four months from its date, which was May 20, 1885. The note was dated at Franklin, Tenn. As an inducement to Campbell to aid them in raising the money, they promised to ship all their cattle to him for disposition so long as their business relations with him remained pleasant. Contemporaneously with the making of this note the makers executed to Campbell, or his assignees, a chattel mortgage on a large number of cattle, to secure that note and all other liabilities they might incur to the mortgagee. This note was discounted at some bank—what one does not appear—by Campbell, upon his indorsement, and the proceeds were placed by him to the credit of Buchanan, who was the manager of this branch of the business, for all the parties interested in raising the money.

The note not having been paid at maturity, Campbell drew up two notes, each for the sum of $12,500, and sent them to Buchanan in Tennessee, with the request that he should sign them, and, after getting the signatures of Parkes and Hill, and signing them himself as Thompson's attorney, return them to himself (Campbell) at Chicago. The manifest purpose of this was to provide the means for taking up the unpaid note for $25,000. The two $12,500 notes were signed by all the makers, except Hill, in Tennessee, and by him lastly, in Mississippi, and thereupon Hill transmitted them to Campbell at Chicago, as the latter had requested, by mail. One of these latter notes was discounted by Campbell with the Third National Bank of St. Louis. The other, which is the note in suit, was, upon his indorsement, discounted with the defendant, the Drovers' National Bank of Chicago. With the proceeds of the two notes Campbell paid off the $25,000 note. The following is a copy of the note on which the present action was brought:

"$12,500.                              Franklin, Tenn., Nov. 6, 1885.

"On or before August 1st we promise to pay to the order of Campbell, Lancaster & Co. twelve thousand five hundred dollars, for value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of ten per cent. per annum until paid, payable at the Drovers' National Bank, U. S. Yards, Chicago, Illinois.

                                    "G. L. Thompson.
                                    "By R. G. Buchanan, Attorney in Fact.
                                    "R. G. Buchanan.
                                    "J. L. Parkes.
                                    "G. R. Hill."

Campbell was well aware of the purpose for which the money obtained on the original note for $25,000 was to be used, and it inferentially appears that it was in fact used for that purpose, though this is not positively shown; but there is nothing in the record tending to show that the Drovers' National Bank had any knowledge of the purpose of the original note, or, indeed, of its existence. Buchanan and his associates never at any time obtained permission from the Indians or their officials, or from the United States, to graze cattle upon the grounds of the Cherokee nation, the country in which that part of the business was prosecuted.

Various grounds of defense were taken at the trial, only two of which are now relied upon, but these are strenuously urged, namely:

First. that the business in which these notes, all of them, were employed, was an unlawful one, in that the bringing cattle into the territory of the Cherokee nation and keeping them for grazing there was in violation of the laws of the United States and of said Cherokee nation; that Campbell, the payee, knew the facts which showed the unlawful use intended to be, and in fact. made of the moneys raised on said notes, and was a party to such use, and that the note in question was therefore void in its inception; and—

Second, that the note in suit must be deemed to have been made in Tennessee, and as, by its terms, it is made payable with interest at a rate prohibited by the law of that state, it is void by that law, which declares that consequence upon usurious contracts.

The circuit judge ruled that neither of these defenses was maintainable, and, no other sufficient defense being offered, instructed the jury that the contract manifested by the note was an Illinois contract, and while, by the law of that state, it was usurious, and the consequence was that no interest was recoverable, yet that the plaintiff was entitled to recover the principal of the note. The jury rendered a verdict accordingly, and judgment was entered for the sum of $12.500.

By the law of Tennessee, interest at 6 per cent. is allowable, and an agreement for a higher rate renders the contract void. By the law of Illinois. 8 per cent. is allowable, and an agreement for more forfeits all interest, but does not invalidate the agreement for the principal.

Vertrees & Vertrees and J. G. Wallace, for plaintiffs in error.
Albert D. Marks, for defendant in error.

Before BARR, SAGE, and SEVERENS, District Judges.

SEVERENS, District Judge, (after stating the facts.) Upon these facts we are clearly of opinion that the defendants could not maintain their defense upon either ground taken by them. In respect to the contention that the note in suit is void because of illegality in the consideration, it must be answered that the facts fall far short of establishing it. Extended reference is made by counsel for the plaintiffs in error to various acts of congress enacted for the purpose of protecting the Indian tribes and their lands from a great variety of wrongful aggressions, and where penalties are imposed upon transgressors, for the purpose of showing the general policy of legislation in regard to the Indians; and special reference is made to sections 2118, 2127, 2138, and 2147 of the Revised Statutes, and to the act of July 4, 1884, which, it is said, prohibit the introduction of cattle into the territory of the Cherokees, for the purpose of grazing them there, without the consent of the Cherokee nation or of the interior department of the United States. We do not deem it necessary to determine whether those acts rendered the business carried on by these parties, without the consent of the Indians or of the United States, so far unlawful as to invalidate their contracts made with other parties for means to prosecute it, where such other parties knew of the intended use of such means, and actually promoted it, because. assuming that to be so, we think this defense must fail for other reasons.

It is argued for the defendant in error that whether or not the legislation. taken together, does in fact prohibit the introduction of cattle, (which is denied,) the bringing them into the territory for

v.55r.no.2—15

such purpose being lawful in some instances, a party dealing with persons so employed might properly suppose that such conditions existed, and that he was not bound to suppose that they were acting in violation of law. This proposition would seem to be a valid one when applied to the protection of a party who had no knowledge that the facts making the business lawful did not exist. There being here no evidence that the bank which discounted the original note had knowledge that the borrower intended to use the proceeds in a business which in its circumstances was unlawful, that note was not invalid in its hands. It is very doubtful whether, assuming that the business was malum prohibitum, the mere knowledge that the proceeds of the note were intended to be used therein would render the note discounted void, if the bank did not co-operate in the use of the money. Sortwell v. Hughes, 1 Curt. 244; Webster v. Munger, 8 Gray, 587. But here the business connected with the giving of the first note and the use of the money realized thereon had transpired. The giving of the new note to raise money to pay off the earlier one did not promote the illegal business, assuming it to have been such, but was a transaction quite distinct from it. The new note, therefore, was not void by reason of any illegality in the first note. Armstrong v. Toler, 11 Wheat. 258; McBlair v. Gibbes, 17 How. 236; Brooks v. Martin, 2 Wall. 70; Planters' Bank v. Union Bank, 16 Wall. 483.

In Brooks v. Martin the parties had been engaged as partners in buying and dealing in bounty land warrants, in violation of a statute prohibiting such dealings, the policy of which was to prevent soldiers to whom the warrants were issued from becoming the victims of speculators. The defendant, who had become possessed of a large sum of money in the prosecution of the forbidden business, resisted the action of his partner for an accounting on the ground of illegality in the cause of action; but the court refused to sustain the defense, and held that as the illegal object had been already accomplished, and the recovery of his share by the plaintiff would not aid in accomplishing any object in violation of law, the defendant should be compelled to account to the plaintiff.

In Planters' Bank v. Union Bank the defendant had sold Confederate bonds which had been sent to it by the plaintiff for that purpose, and in accounts rendered had charged itself with the proceeds. In a suit brought to recover therefor the defendant set up the illegality of selling the bonds as a defense. The court held that the defense did not avail; that while it would have been a good defense to a purchaser of the bond in a suit for the price thereof, or perhaps to the defendants in a suit by the plaintiff to recover damages for a failure to sell as directed, yet that whatever mischief there was in the transaction had already been done, and there was nothing in public policy to be affected by the action of the court in granting or withholding redress on other grounds.

But, further, there being nothing to show that the Drovers' National Bank knew anything about the first note, or the use that was intended to be made of the proceeds of the new one, it would be contrary to elementary principles controlling the transaction in

which the bank was engaged to carry forward into it the consequences of a fault previously committed by the makers of the note, and visit them upon the bank, an entirely innocent party.   It needs no extended reasoning to repel a result so manifestly unjust.

Then, as to the question arising upon the law in regard to the rate of interest, and its consequences.   The plaintiffs in error contend that the note represents a Tennessee contract, and is therefore void, because in contravention of the usury law of that state.   It was held in the court below to be an Illinois contract, and therefore good for the principal, though void as to interest, under the law of Illinois, which inflicts only that penalty upon a usurious contract.   We have no doubt that the view taken by the circuit judge was correct.

It appears that when the note for $25,000 was transmitted to Campbell at Chicago it was the expectation of the makers that it would be used there, either upon a taking by Campbell and an advance by him to them, or, through his indorsement to a third party, presumably a bank, upon a taking by such third party, and its advancement to them, by placing its proceeds to their credit. The latter was the course taken, and it sufficiently appears that that disposition of the note was confirmed by the makers.   Without considering how the matter would stand if Campbell had himself taken the note as holder, and advanced the money, the discounting of the note by the bank there made it an Illinois contract.   It first became a contract when discounted.   The obligation of the makers was not until then imposed.   No suit could have maintained upon it by Campbell.   He was a mere agent for the makers in effecting a loan upon it, and delivering the notes as evidence of their obligation to the bank.   Orr v. Lacy, 4 McLean, 243.   The contract was therefore made in Chicago, and it was payable there.   It follows that it was an Illinois contract.   See authorities cited below upon the same question in reference to the note in suit.

This, however, is only important as it tends to show what the understanding of the parties presumably was in giving the new notes.   That one of the new notes which is now in suit bears date at Franklin, Tenn.   That circumstance, in the absence of all other indications, either in the note or in the extrinsic facts, would render it a Tennessee contract.   But that is usually one of the least controlling circumstances to be attended to in ascertaining by what law a written contract is governed.   In this case the makers intended the note should be used in Chicago for the purpose of satisfying their unpaid obligations in the hands of a bank there. Their transmission of it by mail to Chicago, to be employed for that purpose by one who was to act for them in accomplishing what they had in view,—that is, the meeting of their primary obligation on the original note,—was the equivalent of a manual taking by them of the note to that place, and there delivering it.   Pattison v. Mills, 1 Dow & C. 363, per Lord Lyndhurst; Milliken v. Pratt, 125 Mass. 574.   The obligation of this note, upon the facts disclosed by the record, was created when the Drovers' National Bank discounted it.   The contract was then made, and in Illinois.

By its express terms it was made payable there. Thus the obligation was not only formed, but was also to be solved, in that state. These are two circumstances always very controlling. There is not, in our opinion, room for doubt that the law of Illinois applies to the solution of all questions pertaining to the nature and effect of the obligation. Cook v. Moffat, 5 How. 295; Coghlan v. Railroad Co., 142 U. S. 101, 12 Sup. Ct. Rep. 150; Hall v. Cordell, 142 U. S. 116, 12 Sup. Ct. Rep. 154; Story, Confl. Laws, § 280 et seq.

In Cook v. Moffat, suit was brought on promissory notes which had been dated and signed at Baltimore, where the maker resided, and sent by mail to his agent in New York, and there delivered to the payee in payment for goods purchased in New York. The defendant claimed that the notes were Maryland contracts, and that he had been discharged from liability on the notes by a Maryland court under the insolvent laws of that state. The court, however, did not sustain the defendant's premises, but held, on the contrary, that the notes constituted New York contracts, and were therefore beyond the jurisdiction of the courts of Maryland; saying that, "although the notes purport to have been made at Baltimore, they were delivered at New York in payment of goods purchased there, and of course were payable there, and governed by the laws of that place."

In Coghlan v. Railroad Co., bonds of a railroad company doing business in South Carolina had been issued, purporting to have been executed at Charleston, in that state, and made payable in London. A question arose upon the rate of interest the bonds would bear after their maturity. In order to determine this question it was necessary to ascertain by what law the nature and effect of the obligation of the bonds was to be fixed. It was held that the bonds were English contracts, and that the English law in regard to interest governed the rate. Mr. Justice Harlan, in delivering the opinion of the court, said: "It is contended that the principal sum agreed to be paid should bear interest at the rate of seven per cent., fixed by the laws of South Carolina. The only basis for this contention is the mere fact that the bonds purport to have been made in that state. But that fact is not conclusive. All the terms of the contract must be examined, in connection with the attendant circumstances, to ascertain what law was in the view of the parties when the contract was executed."

The case of Lennig v. Ralston, 23 Pa. St. 137, falls within a recognized exception to the rule. It was there held that a purchaser for value, who in good faith had relied upon the appearances given to the paper, no fact being exhibited to show the contrary, was entitled to be protected in dealing with it upon the assumption that the law of the place was as indicated by those appearances.

It is hardly necessary to add that the fact that this case was tried in Tennessee in no wise changes the result. In whatever forum the case is tried, the rights of the parties must be adjudicated according to the lex loci contractus, which in this case covers as well the making, as the satisfaction, of the debt. Green-

wood v. Curtis, 6 Mass. 358; McIntyre v. Parks, 3 Metc. (Mass.) 207. Coghlan v. Railroad Co., supra, was like this in that respect. No error being found in the record, the judgment must be affirmed.