BOND et al. v. JOHN V. FARWELL CO.

(Circuit Court of Appeals, Sixth Circuit.   July 19, 1909.)

No. 1,921.

1. ESTOPPEL (§ 22*)—BY DEED—CONSIDERATION.
    "Where certain guaranties recited a consideration of $1 to the subscriber in hand paid, the receipt whereof was thereby acknowledged, the guarantors were estopped to deny that any consideration had been in fact paid.
    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 35;  Dec. Dig. § 22.*]

2. GUARANTY (§ 7*)—ACCEPTANCE—NECESSITY.
    In order to obtain credit for a corporation, two of its officers executed certain instruments reciting that, for a consideration paid, they guaranteed plaintiff payment in full for all merchandise sold and delivered to the corporation from time to time, not to exceed a specified amount, to continue until notice of discontinuance given to plaintiff in writing. *Held,* that such contract was not a mere offer of guaranty requiring notice of

acceptance, but was complete from delivery and sale of goods in reliance thereon.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 9; Dec. Dig. § 7.*]

3. GUARANTY (§ 28*)—CONSTRUCTION—WHAT LAW GOVERNS.

A corporation doing a mercantile business in Jackson, Tenn., desiring to purchase goods on credit from plaintiff in Chicago, two of its officers executed contracts of guaranty, both of which contained nothing to show the residence of either of the guarantors, except that the first was dated "Jackson, Tenn." Both contracts were silent as to the place of performance. The goods sold thereunder were delivered to the buyer in Chicago, and it paid both the cartage in Chicago and the freight thence to Jackson. Payments on account were made by the corporation's checks drawn on a Jackson bank payable to the seller without collection charges. Held, that the contracts were made to be performed in Chicago, and were therefore governed by the law of Illinois.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 29; Dec. Dig. § 28.*]

4. EVIDENCE (§ 29*)—JUDICIAL NOTICE—STATUTES.

Courts of the United States, being required to take judicial notice of the laws of the various states. whether depending on statutes or judicial opinions, such courts may look to the whole of a statute which it is required to apply, though merely a portion thereof is pleaded.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 29.*

Judicial notice of public laws and regulations, see note to Smith v. City of Shakopee, 44 C. C. A. 4.]

5. COURTS (§ 366*)—DECISIONS OF STATE COURTS—CONCLUSIVENESS.

Interest being a matter of local regulation only, the decisions of the state courts of last resort thereon are binding on the courts of the United States.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

6. GUARANTY (§ 38*)—CONSTRUCTION—PRESENT AND FUTURE SALES—"ON AND AFTER THE DATE HEREOF."

Where guaranties were in terms to apply to sales made "on and after the date hereof," they applied alike to present and future sales.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 38.*]

7. INTEREST (§ 34*)—STATUTES—"DUE AND OWING."

Where there had been no sale and delivery of goods by plaintiff to a corporation prior to the execution of certain guaranties by its officers to secure subsequent contemplated sales, there was no loan of money in any manner due and owing, within 2 Starr & C. Ann. St. Ill. 1896, c. 74, par. 6, declaring that it shall be lawful to agree that 7 per cent. per annum may be taken for money loaned or in any manner due and owing, etc.

[Ed. Note.—For other cases, see Interest, Dec. Dig. § 34.*]

8. GUARANTY (§ 38*)—CONTINUING GUARANTY—CONSTRUCTION—INTEREST.

Where certain guaranties of payment expressly applied to all goods sold on credit on and after their dates, from time to time, and for any balance or balances of account of such goods, including interest thereon "after maturity," and which were made to continue until notice of their discontinuance of further liability thereon, given by the subscribers in writing to the seller, the guaranties were continuing, notwithstanding the amount of the liability was limited, and were applicable to all future sales made prior to notice of discontinuance.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 38.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. INTEREST (§ 34*)—GUARANTIES—STATUTES—"DUE AND OWING."

2 Starr. & C. Ann. St. Ill. 1896, c. 74, par. 6, provides that it shall be lawful to agree that 7 per cent. per annum shall be paid for money loaned or in any manner "due and owing," etc. *Held*, that it was not essential. to entitle a party to recover interest under such section on contracts of guaranty, that there should be a sum "due and owing" at the time the guaranties were executed, but that it was sufficient that the guaranty was made to apply to the principal's obligations as they were incurred; the guarantor's promise being operative whenever there was money "due and owing" by the principal.

[Ed. Note.—For other cases, see Interest, Dec. Dig. § 34.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This was an action at law upon two instruments of guaranty. It was tried upon the second and third counts of the declaration, with nine separate pleas, and replication; demurrer to the first count having been sustained, and demurrer to the eighth plea having been overruled. All questions arising at the trial were determined by the court, except the one of amount. Motion for a new trial was overruled and the cause brought to this court upon proceedings in error.

The first instrument of guaranty was as follows:

"For and in consideration of the sum of one dollar to the subscriber in hand paid by John V. Farwell Company, the receipt whereof is acknowledged, and for the further consideration that said John V. Farwell Company sell and deliver unto Bond-Penn Dry Goods Company of Jackson, Tenn., goods, wares and merchandise on credit, on and after the date hereof, ———. do hereby guarantee payment unto the said John V. Farwell Company for all goods, wares and merchandise so sold and delivered from time to time, and for any balance or balances of account such goods, wares and merchandise so sold and delivered, and for interest on such account or sales at the rate of 7 per cent. per annum after maturity.

"This guaranty shall extend to all sales of goods, wares and merchandise made on and after this date, by the said John V. Farwell Company, to the said Bond-Penn Dry Goods Company, and shall continue until notice of its discontinuance as to further liability therein is given by the subscribers, in writing, to the said John V. Farwell Company, but the liability of the subscriber, upon this guarantee shall not exceed the sum of one thousand dollars and we do also waive notice of purchase and maturity of bills.                          A. K. Jobe.

"B. F. Bond.

"Dated Jackson, Tenn., November 18, 1904."

The second guaranty was the same as the first, except that the city and state mentioned in the body and at the end of the first paper are omitted in the second, and the word "we" was inserted in the second at the blank line appearing in the first; and, further, the second paper was dated January 27, 1905, and limited to $1,500. A. K. Jobe died, and Annie L. Jobe was appointed his executrix.

Special instructions to the jury were asked by defendants below and refused. The court charged the jury thus:

"I instruct you that these contracts are not Tennessee contracts, but they are Illinois contracts, and are governed by the laws of the state of Illinois, and that they are such contracts as are provided for by the laws of Illinois which are here in proof that may bear 7 per cent. interest and that under the proof as adduced here that these defendants are liable for whatever amount, not exceeding $2,500, that Bond-Penn Dry Goods Company owed these people after these guaranties were executed, that they were continuing contracts, and that they were valid and binding until notice was given by the guarantors that they no longer stood for them."

The subjects of the special instructions requested and of the assignments of error may, so far as necessary to notice, be summarized thus: That no consideration passed between guarantee and guarantors, and no notice of acceptance was given, and that the papers sued on are Tennessee contracts and void

under the usury statutes of that state; and, if Illinois contracts, are in conflict with the interest statutes of Illinois.

W. H. Biggs, for plaintiffs in error.
W. G. Timberlake, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). Under the pleadings and proofs it is clear that the instruments sued on were signed by Jobe and Bond, and that the sum stated in the judgment represented the balance due for merchandise sold and delivered by the Farwell Company on the faith of those instruments to the Bond-Penn Company, with 7 per cent. interest from commencement of suit. The questions claiming our attention are: (1) Whether, under the guaranties, there was lack either of consideration moving from the Farwell Company to Jobe and Bond, or of notice of acceptance; and (2) whether those instruments were intended to be made as contracts of Tennessee or Illinois, and how the interest laws of the one state or the other, as the case may be, affected the contracts.

Each instrument is commenced:

"For and in consideration of the sum of one dollar to the subscriber in hand paid by John V. Farwell Company, the receipt whereof is acknowledged, * * * do hereby guarantee * * *."

Proof was offered and properly excluded, tending to show that the $1 mentioned was not in fact paid or received. After the guarantee has parted with his goods, it is too late for the guarantor to complain that he has not received the consideration. He may recover it; but he is estopped to deny receiving it. In Davis v. Wells, 104 U. S. 159, 167, 26 L. Ed. 686, in passing upon a guaranty containing a similar clause, Mr. Justice Matthews said:

"It is not material that the expressed consideration is nominal. That point was made, as to a guarantee, substantially the same as this, in the case of Lawrence v. McCalmont, 2 How. 426, 452, 11 L. Ed. 326, and was overruled. Mr. Justice Story said: 'The guarantor acknowledged the receipt of the $1, and is now estopped to deny it. If she has not received it, she would now be entitled to recover it.'"

The contention made that no notice of acceptance was given by the Farwell Company to Jobe and Bond is quite as effectually disposed of by the decision just cited, as is the question of consideration. The claim made here, like that urged in Davis v. Wells, is that these guarantors made merely an offer which could not bind them until accepted by the guarantee. In Davis v. Wells, the guaranty was given by Davis and Patrick to Wells, Fargo & Co., and was not different in the respect now under discussion from the guaranty in question. Mr. Justice Matthews said (page 167 of 104 U. S. [26 L. Ed. 686]):

"We think that the instrument sued on is not a mere unaccepted proposal. It carries upon its face conclusive evidence that it had been accepted by Wells, Fargo & Co., and that it was understood and intended to be, on delivery to them, as it took place, a complete and perfect obligation of guaranty. That evidence we find in the words, 'for and in consideration of one dollar to us paid by Wells, Fargo & Co., the receipt of which is hereby acknowledged, we

hereby guarantee,' etc. How can that recital be true, unless the covenant of guaranty had been made with the assent of Wells, Fargo & Co., communicated to the guarantors? Wells, Fargo & Co. had not only assented to it, but had paid value for it, and that into the very hands of the guarantors, as they by the instrument itself acknowledged."

It is true that in the present case neither instrument was delivered in person by either Jobe or Bond to the Farwell Company; but the instruments were signed by Jobe and Bond, and were each turned over by Jobe to the manager of the Bond-Penn Company for the purpose of delivery. Upon this question, then, the instruments must, we think, be treated the same as if they had been personally given by the guarantors to the guarantee, and the consideration had at that time been in fact paid and received. Thus a privity and an obligation were created.

In Davis Sewing Machine Co. v. Richards, 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480, relied on by counsel for plaintiffs in error, the guaranty did not state whether the person guaranteed or the person in whose behalf the guaranty was given paid the consideration, and consequently the instrument was treated as a mere proposal, requiring notice of acceptance before a privity or an obligation could be said to have been established. The distinction between the two classes of instruments was elaborated by Mr. Justice Matthews in Davis v. Wells, and was approved by Mr. Justice Gray in Davis Sewing Machine Co. v. Richards.

It is to be observed, further, that, at the times these papers were signed and delivered, both Jobe and Bond were stockholders and directors of the Bond-Penn Company, a Tennessee corporation. Jobe was its president, and Bond its assistant treasurer. Jobe owned one-third of the capital stock, and was so far in active control of the company as to dominate the manager, F. E. Bond. True, the other guarantor, B. F. Bond, owned only a nominal interest in the stock, and did not remember that he had been assistant treasurer; but the important fact remains that he and Jobe were interested in the company, both financially and officially. As evidence of their interest in securing credit for their company, it will be observed that they agreed that the guaranties should continue until notice of discontinuance was given by them in writing, and that they waived "notice of purchase and maturity of bills."

Jobe died after the goods were delivered. A representative of the Farwell Company testified that Jobe acknowledged after bankruptcy of the Bond-Penn Company that the guaranties would have to be met, but that he wished the claim to be first presented to the trustee. This was done and credit given of the amount received. Jobe's testimony does not appear to have been taken. The other guarantor, Bond, testified that he did not know of the delivery and receipt of the goods. Both of these corporate directors and officials knew, however, that the instruments of guaranty had to be executed in order to obtain the goods. Why, then, should they not be chargeable with knowledge of the receipt of the goods, and, for that additional reason, with knowledge that their guaranties had been accepted? The goods were for their benefit, no matter how great or how small the benefit. It is settled that knowledge in this respect need not be acquired in any particular mode;

for, obviously, knowledge is notice. Barnes Cycle Co. v. Reed, 91 Fed. 481, 483, 33 C. C. A. 646.

In Doud v. National Park Bank, 54 Fed. 846, 847, 4 C. C. A. 607, 609, a guaranty was under consideration which had been signed and delivered to the Park Bank by five persons who were stockholders and directors of the National Bank of Sheffield, Ala., to secure loans and discounts or other advances made to the latter bank; but the instrument did not state who had paid the consideration of $1. It was held:

"Concede that the writing is an offer of guaranty; it is given on a consideration moving to the guarantors through their bank, and in such cases the performance of the consideration by the guarantee implies its acceptance, completes the contract, and imposes the liability."

See, also, Jones v. Britt (C. C. A.) 168 Fed. 852, 856.

We are thus brought to the question: Whether these contracts are governed by the laws of Tennessee or Illinois.

The first contract states the place of business of the Bond-Penn Company as Jackson, Tenn., and is dated November 18, 1904; but the first contract is silent as to the location and place of business of the Farwell Company, and the second one is as to both companies. There is nothing in either contract to show the residence of either of the guarantors, save only that the first guaranty is dated at Jackson. Both contracts are silent as to place of performance.

It is not difficult, however, to ascertain the real intent of the parties. It was admitted on the record that the Farwell Company was an Illinois corporation, located and carrying on a mercantile business in Chicago, and that at the dates of the contracts the Bond-Penn Company was a Tennessee corporation, located and carrying on its business at Jackson, and that the guarantors were residents of that place. On November 14, 1904, at Jackson, one of the guarantors, Jobe, addressed and sent a letter to the Farwell Company by the manager of the Bond-Penn Company, stating:

"Mess. Bond-Penn Dry Goods Company will probably want a few goods of you between now and December 15th. As they have never bought from you, I write to say I will guarantee all their purchases made in that time.
        "Respct.,                                        A. K. Jobe."

The manager, F. E. Bond, presented this letter to the Farwell Company. That company preferred its form of guaranty to that expressed in the letter, and requested F. E. Bond to have substitution made. The new paper was signed by Jobe, and he obtained Bond's signature. Bond explains this by saying that his conversation with Jobe "was in regard to goods that they needed, and it was a guaranty for the goods, and he felt that I should go on that paper with him, and I did, without reading the paper, as I remember." The paper was then given to the manager, and by him mailed at Jackson to the Farwell Company, at Chicago. F. E. Bond testified that the reason he took the letter of Jobe to the Farwell Company was "to get the goods quickly. We needed them, and usually you would have to wait for references. We had never bought any goods from this house before, and they would investigate us before shipping goods, and we hadn't been able to pay our bills promptly, and, of course, I didn't know whether these would be shipped out promptly." After stating that Jobe was president of the

company, and that he owned a third interest in the stock, F. E. Bond stated that he "was under instructions from him (Jobe) a great deal of the time." He further testified:

"Q. 12. He (Jobe) was the ostensible and real head of your business, was he not? A. Yes, sir."

This alone would indicate that Jobe was endeavoring to secure a line of credit from the Farwell Company for the Bond-Penn Company; also, that B. F. Bond was trying to do the same thing. True, Jobe may have stimulated him to act when he told Bond that they needed the goods, that the paper was a guaranty for them, and that he felt that Bond "should go on that paper with him." Why should such a statement have been made except upon the hypothesis that they were jointly interested in a company needing a line of credit? Indeed, F. E. Bond, the manager, testified that both papers were made for the purpose of obtaining for the Bond-Penn Company "a line of credit of $2,500."

It will not do to say that the Farwell Company requested Jobe and Bond to sign the guaranties. As stated, Jobe opened negotiations for the line of credit by offering himself as guarantor, and he later associated Bond with him. When the first paper in suit was signed by the two guarantors, it was not responsive to the change of papers which the Farwell Company had suggested. It is therefore difficult to perceive how the transaction could be regarded as closed until the paper reached the Farwell Company. The second paper was given simply to increase the line of credit, and may be treated the same as the first one.

Moreover, the goods were delivered by the Farwell Company, to the Bond-Penn Company in Chicago. The Bond-Penn Company paid both the cartage in Chicago and the freight thence to Jackson. True, payments were made on account of the goods by sending to the Farwell Company checks of the Bond-Penn Company, drawn upon and paid by a bank of Jackson; but, since no question as to payment of the checks is made, we see no reason why they should not have been treated, as they evidently were for all practical purposes, as payments at Chicago. Nothing in the way of exchange or cost of collection is shown to have been paid by either of the parties.

Now, it was with respect to the conditions thus pointed out that these contracts were made and kept in force by the guarantors. Can it be doubted that the contracts were meant to be performed in Chicago? Must they not be read and interpreted with reference to the place of purchase and delivery of the goods? The contracts had no reason to exist except only to secure payment for goods to be purchased and delivered at Chicago.

We are therefore of opinion that, in view of the objects of these contracts of guaranty and of the circumstances under which they were made, they were intended to be fulfilled in Illinois; and consequently that they are to be governed by the laws of Illinois.

Johnson v. Chas. D. Norton Co., 159 Fed. 361, 363, 86 C. C. A. 361; Buchanan v. Drovers' Nat. Bank, 55 Fed. 223, 227, 5 C. C. A. 83; Coghlan v. South Carolina R. Co., 142 U. S. 101, 110, 12 Sup. Ct. 150, 35 L. Ed. 951; Hall v. Cordell, 142 U. S. 116, 12 Sup. Ct. 154, 35 L. Ed. 956; Neal v. New Orleans, etc., Association, 100 Tenn. 607, 613, 46 S. W.

755; First Nat. Bank of Geneva, Ohio, v. Shaw, 109 Tenn. 237, 240, 70 S. W. 807, 59 L. R. A. 498, 97 Am. St. Rep. 840; Railway Co. v. Sheppard, 56 Ohio St. 68, 78, 46 N. E. 61; Montana Coal & Coke Co. v. Cin. Coal & Coke Co., 69 Ohio St. 351, 357, 69 N. E. 613.

As to the interest: The contracts provided for 7 per cent. interest after maturity of accounts. It is alleged in the declaration that the statute law of Illinois is that it shall be lawful to agree that 7 per cent. per annum shall be taken and paid upon every $100 of "money loaned or in any manner due and owing from any person or corporation to any other person or corporation." This is denied in the ninth plea. In rendering their verdict, the jury found that there was $251.26 of accrued interest, and this sum was included in the judgment. The fourth paragraph of the statute was offered in evidence; but since courts of the United States are bound to take judicial notice of the laws of the various states, "whether depending upon statutes or upon judicial opinions," we may look at the whole of the statute. Lamar v. Micou, 114 U. S. 218, 223, 5 Sup. Ct. 857, 29 L. Ed. 94.

The point urged is that these contracts when made did not represent "money loaned or in any manner due and owing." This can be aimed only at the interest, because, even if the rate reserved could be treated as usury, the only penalty imposed by paragraph 6 of the act is forfeiture of the interest, not the principal (2 Starr & C. Ann. St. Ill. 1896, p. 2295, c. 74). No decision of any court of Illinois construing the language just quoted upon an objection like the present one has been cited; nor have we been able to find one. This is unfortunate, for, interest being a matter of only local regulation, the decisions of the courts of last resort of the states are binding upon the courts of the United States. Ohio v. Frank, 103 U. S. 697, 26 L. Ed. 531; Bolles v. Town of Amboy (C. C.) 45 Fed. 168. It is plain, however, that, unless the present contracts for interest are sustainable under the statute in question, no recovery of interest can be allowed. Fowler v. Harts, 149 Ill. 592, 597, 36 N. E. 996; Felt v. Bell, 205 Ill. 213, 229, 68 N. E. 794.

Each guaranty was in terms made to apply to sales made "on and after the date hereof." Clearly, the guaranties were intended to be applied alike to present and future sales of goods. We think a fair preponderance of the testimony shows that no delivery of goods was made until after the first contract was received by the Farwell Company, and we do not recall any testimony of a definite character in this regard concerning the second contract. We are bound therefore to assume that no money was "due and owing" from the Bond-Penn Company to the Farwell Company when the contracts were executed, and no "loan" of money was involved in any of the transactions.

But these are continuing guaranties. Each guaranty of payment is expressly made to apply to all goods sold and delivered on credit on and after their dates "from time to time, and for any balance or balances of account of such goods," including interest thereon "after maturity"; and each is expressly made to "continue until notice of its discontinuance as to further liability therein is given by the subscribers, in writing," to the Farwell Company. True, the liability was limited, as stated, to the sum of $1,000 in the first and $1,500 in the second guaranty; but this did not detract from the continuing nature of the

guaranties, nor prevent them from applying to all future sales made, so long as no notice of discontinuance was given, and no demand was made or recovery allowed beyond the limit fixed. We think the continuing character of the contracts is manifest under the decision of Mr. Justice Story in Douglass v. Reynolds, 7 Pet. 113, 123, 8 L. Ed. 626. See, also, Crittenden v. Fiske, 46 Mich. 70, 8 N. W. 714, 41 Am. Rep. 146; Hatch et al. v. Hobbs, 12 Gray (Mass.) 447; Nottingham Hide Co. v. Bottrill, L. R. 8. C. P. 694, 701, 702.

The very nature of such a guaranty is that its obligation shall apply to the liabilities of the principal as they arise, and to the interest to accrue upon them as they severally become payable. Both the evidence and the language of the contracts show that sales were in contemplation immediately upon the execution of the guaranties. If a contract intended to guarantee interest at 7 per cent. could not be given before a single sale was actually consummated, it clearly could not be as to a succession of sales. Nor could such a contract be made under any other provision of the statute relating to interest, for each provision giving a right either to agree upon or exact interest is limited by words apparently as exclusive of a guaranty like the present, as are the words "due and owing." It is not to be presumed that the lawmaking power intended to forbid contracts of guaranty which assure both principal and interest, any more than it did to prohibit guaranties of principal without interest. This would be opposed to well-known commercial necessities for contracts of guaranty.

We therefore hold that it is not essential that there should be a sum "due and owing" at the time of the execution of contracts like these. We think it is enough if the guaranty is made to apply to the principal's obligations as they are incurred, for the promise of the guarantor will become operative, as obviously intended, whenever there shall be money "due and owing" by the principal.

The assignments of error need not be further considered.

The judgment must be affirmed.