QUIGLEY *v.* WOLF.

MORTGAGES — FORECLOSURE — TRUSTS — INCONSISTENT POSITIONS — PUBLIC POLICY—INJUNCTION AGAINST FORECLOSURE.

In a suit to restrain defendant from foreclosing a mortgage by advertisement, upon the alleged ground that defendant, as trustee, had entered into a contract of guaranty that was void as against public policy, by reason of defendant's occupying illegal and inconsistent

positions, *held*, that if any harm had been done by the alleged improper conduct of defendant, the court could not remedy the illegality of the transaction by declaring the mortgage invalid.

Appeal from Kent; Brown, J. Submitted April 14, 1913. (Docket No. 60.) Decided November 3, 1913.

Bill by John F. Quigley and wife against Gustave A. Wolf for an injunction to restrain the defendant from foreclosing a mortgage by advertisement. From a decree for defendant, complainants appeal. Affirmed.

*Charles E. Ward,* for complainants.

*Gustave A. Wolf* and *Myron H. Walker,* for defendant.

MOORE, J. On April 11, 1908, the complainants made a mortgage on certain real estate, running to the defendant. During the summer of 1911, the defendant commenced to foreclose said mortgage by newspaper advertisement. The bill of complaint in this case was filed July 6, 1911. It is a sworn bill of complaint. In it is averred that defendant was, on and before January 31, 1908, the legal adviser of complainants, and represented to them that it was important for them to acquire certain stock in the J. F. Quigley Lumber & Land Company, and that defendant undertook to procure said stock, if complainants would execute to David Wolf, a brother of the defendant, the mortgage hereinafter described.

The bill of complaint proceeds as follows:

"That in order to carry out said arrangement and comply with the said advice so given them by said defendant, they, at some time in the early part of the year 1908, the exact date of which they are unable to give, at the request and instance of said defendant, signed a mortgage for the sum of $3,000, cover-

ing the land hereinbefore described, and executed a
note for the said sum of $3,000, which note repre-
sented the said indebtedness which said mortgage was
given to secure, and that the said mortgage, after
being so executed, was left with the said defendant.

"That at the time said mortgage was made and so
left with said defendant, the agreement and arrange-
ment therefor was, by the said defendant, reduced to
writing and signed by him, and said writing was
delivered to your orators and the same is now in their
possession ready to, be produced and proved as this
honorable court shall direct. The said writing truly
and correctly recites the agreement then made be-
tween your orators and the said defendant in regard
to said mortgage, and is in words and figures as fol-
lows:

" 'GRAND RAPIDS, MICHIGAN, January 31, 1908.

" 'Received of John F. Quigley and Flora E. Quigley, a cer-
tain note and mortgage bearing even date herewith, made by
them to David Wolf on lots seven (7) and eight (8) of block
(11) Oakdale Park addition to the city of Grand Rapids, to
be held by me in escrow and delivered to said David Wolf by
me on receipt by me of thirty (30) shares of preferred stock
in the J. F. Quigley Lumber & Land Company, issued to C. R.
Hills, represented by certificate No. 26; ten (10) shares of pre-
ferred stock in said J. F. Quigley Lumber & Land Company,
issued to Elmer E. Dennis, represented by certificate No. 28;
nine (9) shares of preferred stock in said J. F. Quigley Lum-
ber & Land Co., issued to Alvin E. Dennis, represented by
certificate No. 29; and one (1) share of preferred stock in
said J. F. Quigley Lumber & Land Company, represented by
certificate No. 22 issued to Horace L. Foote, all of said shares
of stock to be indorsed in blank by the owner thereof and
delivered by me to said Flora E. Quigley on the delivery of
said mortgage to said David Wolf.

" 'On failure by me to receive said stock within ninety days
from the date hereof said mortgage is to be returned by me
to said John F. Quigley and Flora E. Quigley or either of them.

" 'G. A. WOLF.'

"That said defendant never procured the certifi-
cates of stock mentioned and described in the receipt
so delivered by him to your orators.   *   *   *

"That the said defendant, contrary to the rights of
your orators, and without their consent, on, to wit,

the 11th day of April, 1908, recorded said mortgage in the office of the register of deeds for the county of Kent; that by an examination of the record of said mortgage it appears to bear date April 11, 1908, and to run to the said defendant, but your orators show that the said mortgage is the same and none other than the one described in said receipt so executed and delivered to your orators by the said defendant. * * *

"That notwithstanding the agreement and arrangement hereinbefore set forth between your orators and said defendant, and contrary to the rights and equities of your orators, the said defendant has advertised and given out that default has been made in the conditions of said mortgage; that on March 30, 1911, there was due from your orators to him upon said mortgage the sum of $3,574, and has caused to be published in the Grand Rapids Chronicle, a newspaper published at Grand Rapids, Mich., and circulating in the county of Kent and elsewhere, a notice of mortgage foreclosure sale. * * * *"

The prayer of the bill of complaint is:

"*(a)* That a temporary injunction be issued out of this honorable court, restraining the said defendant from selling or attempting to sell the land mentioned in this bill of complaint at the time stated in said notice of sale, or at any other time.

"*(b)* That at the final hearing of this cause said injunction be made permanent.

"*(c)* That the said defendant may be required, by the decree of this court, to discharge said mortgage of record and deliver the same, together with said note, to your orators.

"*(d)* That your orators have such other and further relief in the premises as shall be agreeable to equity and good conscience.

"*(e)* That appropriate process issue herein.

"JOHN F. QUIGLEY,
"FLORA E. QUIGLEY,
"Complainants."

The defendant filed an answer in the nature of a cross-bill, in which he avers that in the negotiation for the stock mentioned in the bill of complaint, the

agreement to procure the same was made with David Wolf, and not defendant; that defendant was acting as the legal adviser of David Wolf, and not for the complainants; that the mortgage to which the paper dated January 31, 1908, set out in the bill of complaint, refers, was a mortgage for $1,500, running to David Wolf, and was not the mortgage defendant was foreclosing. We now quote from the answer and cross-bill:

"Defendant denies the allegations of paragraph 5 of said bill. The consideration for the $3,000 mortgage dated April 11, 1908, was the payment by defendant at complainants' request of the $1,500 note and mortgage of January 31, 1908, held by David Wolf, and the further advance and credit at their request by defendant to complainants of money and money's worth to the additional amount of $1,500. And that the $3,000 consideration for the mortgage of April 11, 1908, was derived from and charged up to trust funds in the hands of defendant not his own, as complainants well knew at the time.

"Defendant denies the allegations of paragraph 6 of said bill. The stock agreed to be procured was procured for them by David Wolf at the time of the execution of the $1,500 mortgage to him.

"Defendant denies the allegations of paragraph 7 of said bill. That complainants well knew that the mortgages of January 31, 1908, and of April 11, 1908, represent different transactions, and that the latter mortgage represents the full consideration of $3,000 to the parties thereto.  *  *  *

"And this defendant, further answering and claiming the benefit of a cross-bill, says: That on or about April 11, 1908, said John F. Quigley and Flora E. Quigley did make and execute under their hands and deliver to defendant their one certain promissory note dated the 11th day of April, 1908, and thereby, for value received as hereinbefore set forth, promised to pay to him the sum of $3,000 on or before five years after date thereof with interest at 7 per cent., payable semi-annually.  *  *  *

"That said mortgage contains a covenant and agreement that, should default be made in the pay-

ment of the interest, or any part thereof, when payable, and should the same remain unpaid for 30 days, then the principal sum with all arrearages of interest should, at the option of the mortgagee, become payable immediately, although the period limited for payment thereof should not then have expired.

"That the execution of said mortgage was, on April 11, 1908, duly acknowledged by the said John F. and Flora E. Quigley before a notary public duly authorized to take such acknowledgment; the certificate of such acknowledgment being duly indorsed on said mortgage.   *   *   *

"Defendant further shows that, as he believes and charges, this bill herein is not filed by complainants in good faith, but is without merit, and without any legal or equitable basis therefor in fact, as they well know. That the injunction herein was sued out recklessly, and with the malicious intent to cause defendant unnecessary delay and expense in the collection of said $3,000 mortgage, and to injure him personally. That defendant has been promised time and again payment of the interest, and also has been promised payment of the principal, of said $3,000 mortgage. That no question whatever has ever been raised about the validity of the mortgage to the full amount until defendant gave notice of his intent to foreclose, and then the present defense stated in the bill was, as defendant verily believes and charges, trumped up."

The prayer is for affirmative relief.

The case was put at issue and tried in open court at such length that the printed record contains nearly 500 pages. The trial judge made a decree, in which appears the following:

"(1) That the $3,000 note and mortgage mentioned in the original bill, which are dated April 11, 1908, running to the defendant, G. A. Wolf, were given in consideration of the payment by the defendant, G. A. Wolf, of $3,000 in money and money's worth to and for the use and benefit of the complainants as hereinafter stated, and were not given for the consideration and upon the conditions alleged in said bill.

"(2) That the receipt and agreement signed by

the defendant, G. A. Wolf, set forth in paragraph 5 of said original bill, refers to a prior mortgage of $1,500, dated January 31, 1908, running to David Wolf, and does not refer in any manner to the $3,000 note and mortgage.

"The said agreement was superseded by other agreements subsequently executed between the parties, being Exhibits Nos. 18 and 22, inclusive, of all of which complainants had full knowledge.

"Said $1,500 mortgage to said David Wolf was recorded on April 3, 1908, at which date, at the latest, it became and was an absolute and unconditional obligation from said complainants to said David Wolf.

"(3) That on April 11, 1908, the defendant, G. A. Wolf, at the request of complainants, took up and paid to said David Wolf said $1,500 note and mortgage, and said David Wolf discharged the sums of record on the same date; and the said G. A. Wolf, at the complainants' request and on the same date, also took up and paid another note and mortgage given by the complainants on lot 22, Nagele's addition, on which there was due $467, and at the same time gave them money and credit for the balance of $3,000, a full statement of the amount of which said $3,000 mortgage and the consideration is as follows:

| | | |
|---|---:|---:|
| David Wolf note and mortgage paid by defendant at complainants' request......... | | $1,500 00 |
| Interest, etc. ............................ | | 20 00 |
| Quigley mortgage on lot 22, Nagele's addition, paid by defendant at complainants' request .................................... | | 467 00 |
| Certificate of deposit .............. | $650 00 | |
| Certificate of deposit .............. | 153 37 | |
| Delivered to complainants by defendant..... | | 803 37 |
| Credit as agreed on account of complainants, owing to defendant ..................... | | 137 22 |
| Check of G. A. Wolf to complainant J. F. Quigley for balance ..................... | | 73 45 |
| | | $3,001 04 |

"The money for the above amounts, aggregating $3,000, for which said mortgage was given, was a loan to complainants from trust funds held by G. A. Wolf, as trustee, for and belonging to the estate of

his mother, who was deceased, and the income of which belonged to his father, and who is still living, of which the complainants had notice and knowledge; and the same was at the time charged by defendant in his account with said trust as a loan to complainants.

"That the securities were marked by defendant as belonging to his mother's estate, and were kept by him in a separate drawer in his safe, used only for the securities of her estate, and defendant kept an account on his books with his mother's estate in which this transaction appears, and he made an annual report to his father, showing the securities belonging to the estate and the income therefrom, which report included this $3,000 mortgage and accrued interest.

"(5) That the defendant practiced no deception upon complainants, and that they were fully cognizant of the facts in connection with said $3,000 mortgage and the consideration thereof, and voluntarily executed the same to secure the moneys advanced and used for their benefit as above stated."

Then followed the usual decree of foreclosure. The complainants bring the case here by appeal.

The record shows that in making certain statements in this sworn bill of complaint the complainant John F. Quigley is certainly very reckless. His own proofs show beyond any question that the paper set out in his bill of complaint did not refer, as he states, to the $3,000 mortgage which was in process of foreclosure, but did refer to a $1,500 mortgage, which at the time the $3,000 mortgage was given was discharged of record, and was delivered to Mr. Quigley and produced by him upon the trial. It is said in his behalf that he was ill when the transactions referred to in his complaint occurred, and that he had forgotten what happened. The situation disclosed by the record hardly justifies this claim, and certainly if before filing this bill of complaint the records in the office of the register of deeds had been examined, they would have shown the falsity of the aver-

ments.   There did, however, arise upon the trial of the case grave questions growing out of certain documentary evidence in the case, to some of which documents reference is made in the decree rendered in the court below.

It is claimed on the part of defendant that David Wolf procured 20 shares of stock under the agreement made in January, 1908, but that it was found in February that he could not get the balance of it because of litigation which had arisen between one Hills and the Dennis brothers, who were the holders of the stock, and that to take care of any possible trouble arising out of the failure to procure the balance of the stock other papers, reading as follows, were executed, dated as of the same date as the prior paper, and that they were to stand in the place of it.

"GRAND RAPIDS, MICH., Jan. 31, 1908.

"Received of John F. and Flora E. Quigley one note and mortgage for $1,500, being payment in full for the 20 shares of preferred stock of the John F. Quigley Lumber & Land Co., issued to Dennis Bros. and Foote.

"And we also guarantee that Flora E. Quigley shall recover a decree in her chancery suit against said company and G. A. Wolf, Trustee, for the discharge of the two mortgages held by said trustee; and we also guarantee that if liability is established and collection made on account of the 30 shares of preferred stock in said company issued to C. R. Hills, either against said company or John F. and Flora E. Quigley, that we will save them harmless from such payment up to the amount of $1,000.

"And if David Wolf is not held liable on account of any other indemnity he has signed on account of said Hills stock, then we will save said parties harmless from such payment up to the amount of $1,500.

"DAVID WOLF,
"G. A. WOLF."

"GRAND RAPIDS, MICH., Jan. 31, 1908.

"I hereby agree in consideration of the contract this day made with David and G. A. Wolf that if any

liability arises thereunder against them in excess of fifteen hundred dollars, that I will make the same good to them to an amount not exceeding five hundred dollars, additional.

"JOHN F. QUIGLEY."

Counsel for complainant argue with great earnestness that these papers disclose a situation that should not only avoid the $1,500 mortgage, but the $3,000 mortgage as well. This claim is based upon the fact that when the guaranty agreement, so called, was made, Mr. G. A. Wolf, as trustee, was a party to the suit mentioned therein, and that the agreement was void because against public policy. It is the claim of defendant that the agreement was not illegal because he did not represent the stockholders in the litigation; that his answer disclosed that he was a mere stakeholder; that the stockholders were represented by the receiver, who had put in an answer, and was represented by a solicitor, and that defendant was a mere stakeholder, and his conduct would in no way influence the decree that would be rendered. He claims, further, that as trustee he had no interest in the litigation because the trust had been completed. We quote from his brief:

"We desire to emphasize the fact that defendant was not in law or fact any longer a trustee at the time the agreements in question were made in February, 1908, but was in the position of a mere stakeholder. His appointment was for a special purpose only, to secure certain indorsers or guarantors. The trust instrument states the specific purpose:

"'To secure the following directors * * * for their indorsement or guaranty of a certain note * * * which may be made within one year.'

"And this agreement provided that when the notes were paid, the securities 'shall be reassigned by said trustee to said company.' When defendant on June 25, 1907, paid the bank the $2,350, the balance due it, and thereby completely executed the purpose of the

trust, he became a mere stakeholder for Mr. Miller, the receiver, who was the company's sole legal representative.   As Judge Hatch testified:

" 'I certainly understood that the order by which Fred C. Miller was appointed receiver carried with it the right to all of the assets of the company. * * * As a matter of fact I knew that an assignment of those mortgages had been made to the trustee prior to the appointment of the receiver. I suppose whatever equity or rights the company had in the reassignment of those mortgages back to the company was conveyed to Mr. Miller by the order appointing him receiver.'

"In addition to the authorities we have cited, showing that on the performance of the defendant's trust the title to the securities at once passed by operation of law, we cite further: *Selden* v. *Vermilya*, 3 N. Y. 525, where it is held:

" 'A trust to sell real estate for the payment of debts ceases when the debts are in any mode paid or discharged.'

"And in *Salomon* v. *Sternfeld* [102 N. Y. 665], 7 N. E. 47, it is held:

" 'The purpose for which a trust was created having ceased, the trust itself ceases, and the property reverts to the creator of the trust.'

"In *Brillhart* v. *Mish*, 99 Md. 447 [58 Atl. 28], it is held:

" 'The legal estate of a trustee under a voluntary deed of trust does not last longer than is necessary to effect the objects of the trust, and when these objects have been accomplished the trust is at an end.'

In 1 Perry on Trusts, § 312, it is said:

" 'Although a legal estate may be limited to a. trustee to the fullest extent, as to him and his heirs, yet it shall not be carried farther than the execution of the trust necessarily requires.'

"And in *Doe* v. *Considine*, 6 Wall. [U. S.] 458, it is stated:

" 'It is equally well settled that where no intention to the contrary appears, the language used in creating the estate will be limited and restrained to the purposes of its creation.

And when they are satisfied, the estate of the trustee ceases to exist, and his title becomes extinct. The extent and duration of the estate are measured by the objects of its creation.'

"It is clear that the receiver was the only person who could claim title to the mortgages if they belonged to the company, and at this time he was asserting this claim by his answer and cross-bill in Mrs. Quigley's suit. It is an elementary principle that the receiver of an insolvent corporation represents the stockholders as well as the creditors. The syllabus in *Franklin Nat. Bank* v. *Whitehead,* 149 Ind. 562 [49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302], states:

" 'A receiver of an insolvent corporation represents the creditors as well as the stockholders, and holds the property for the benefit of both, and, as trustee for creditors, can maintain and defend actions which the corporation could not.'

"And in *Hays* v. *Pierson* [N. J.], 58 Atl. 728, it is held:

" 'While a receiver of a corporation is the representative of creditors, he is also the representative of the corporation and of its stockholders, and may inquire into actions of the directors to the same extent that stockholders might do.'

"See, also, *First Nat. Bank* v. *Iron Works,* 60 Mich. 487, 499 [27 N. W. 657]. It is evident, from the trust agreement with defendant and the circumstances surrounding it, that it was intended solely for the benefit of the indorsers thereby secured. The defendant, therefore, as trustee did not represent stockholders; and clearly after the trust was executed he owed them no duty, and he could not then act for them. The title to the trust securities had immediately passed to the legal owners thereof. Still no act was committed, or even dreamed of, tending to a breach of trust. Defendant merely stood indifferent between the claimants awaiting the determination of the court. And as shown, his trust was ended, and his signing the agreement in question could not be, and was not, a breach of trust."

A reading of the record satisfies us that all the parties in interest supposed they had a right to do just what was done, and that it was to the advantage

of the complainants in the present proceeding to have it done. Under the facts disclosed by the record we do not need to decide this feature of the controversy. Mr. David Wolf is not made a party to this proceeding. A decree later was entered in the case then pending as had been guaranteed. It still stands. After it was entered at the request of Mr. Quigley, Gustave A. Wolf paid David Wolf the $1,500 mortgage. It was paid out of funds in the hands of Mr. Wolf belonging to the estate of his mother, the income of which belonged to his father, and those facts were known to Mr. Quigley. An accounting was also had between Mr. Gustave A. Wolf and the Quigleys, and the state of the account was agreed upon, and with full knowledge of the situation the $3,000 mortgage was given. In this connection language used by Judge Severens, in *Buchanan* v. *Drovers' Nat. Bank,* 55 Fed. 223, 5 C. C. A. 83, is pertinent:

"It is very doubtful whether, assuming that the business was *malum prohibitum,* the mere knowledge that the proceeds of the note were intended to be used therein would render the note discounted void, if the bank did not co-operate in the use of the money. *Sortwell* v. *Hughes,* 1 Curt. 244 [Fed. Cas. No. 13,177]; *Webster* v. *Munger,* 8 Gray [Mass.], 587. But here the business connected with the giving of the first note and the use of the money realized thereon had transpired. The giving of the new note to raise money to pay off the earlier one did not promote the illegal business, assuming it to have been such, but was a transaction quite distinct from it. The new note, therefore, was not void by reason of any illegality in the first note. *Armstrong* v. *Toler,* 11 Wheat. [U. S.] 258; *McBlair* v. *Gibbes,* 17 How. [U. S.] 236; *Brooks* v. *Martin,* 2 Wall. [U. S.] 70; *Planters' Bank* v. *Union Bank,* 16 Wall. [U. S.] 483.

"In *Brooks* v. *Martin* the parties had been engaged as partners in buying and dealing in bounty land warrants, in violation of a statute prohibiting such dealings, the policy of which was to prevent soldiers to whom the warrants were issued from becoming

the victims of speculators. The defendant, who had become possessed of a large sum of money in the prosecution of the forbidden business, resisted the action of his partner for an accounting on the ground of illegality in the cause of action; but the court refused to sustain the defense, and held that as the illegal object had been already accomplished, and the recovery of his share by the plaintiff would not aid in accomplishing any object in violation of law, the defendant should be compelled to account to the plaintiff.

"In *Planters' Bank* v. *Union Bank* the defendant had sold Confederate bonds, which had been sent to it by the plaintiff for that purpose, and in accounts rendered had charged itself with the proceeds. In a suit brought to recover therefor the defendant set up the illegality of selling the bonds as a defense. The court held that the defense did not avail; that while it would have been a good defense to a purchaser of the bond in a suit for the price thereof, or perhaps to the defendants in a suit by the plaintiff to recover damages for a failure to sell as directed, yet that whatever mischief there was in the transaction had already been done, and there was nothing in public policy to be affected by the action of the court in granting or withholding redress on other grounds."

See, also, *Portsmouth Brewing Co.* v. *Mudge,* 68 N. H. 462 (44 Atl. 600) ; *Boggess* v. *Lilly,* 18 Tex. 200.

We have not overlooked the item of $450 upon which counsel place much stress, though it is not mentioned in the bill of complaint. We accept defendant's version of this item, and hold it was intelligently passed upon by the parties when the mortgage was given.

The decree is affirmed, with costs.

BROOKE, KUHN, STONE, and BIRD, JJ., concurred with MOORE, J. STEERE, C. J., and MCALVAY and OSTRANDER, JJ., concurred in the result.